**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**
**U.S.C.A. NO. 15-11704-E**

---

| | | |
|---|---|---|
| **MELISSA KOHSER,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | **DC Dkt. No.** |
| **v.** | ) | **2:11-cv-03915-VEH** |
| | ) | **Northern District of Alabama** |
| **PROTECTIVE LIFE CORPORATION,** | ) | **Southern Division** |
| | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |

---

# INITIAL BRIEF OF PLAINTIFF-APPELLANT MELISSA KOHSER

---

Alicia K. Haynes
Charles E. Guerrier
HAYNES & HAYNES, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226
Tel: (205) 879-0377
Fax: (205) 879-3572

Attorneys for Appellant
August 26, 2015

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

No. 15-11704-E *Melissa Kohser v. Protective Life Corporation*

---

Pursuant to 11th Circuit Rule 25.2-1, the undersigned counsel of record for the Plaintiff-Appellant Melissa Kohser hereby certifies the following as a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations (including subsidiaries, conglomerates, affiliates, parent corporations, and any publically held corporation that owns 10% or more of the party's stock), and other identifiable legal entities related to a party that have an interest in this case.

1. The Honorable Judge Virginia E. Hopkins, United States District Court for the Northern District of Alabama.
2. The Honorable Magistrate Judge Robert R. Armstrong (retired), United States District Court for the Northern District of Alabama
3. The Honorable Magistrate Judge John H. England, United States District Court for the Northern District of Alabama.
4. Melissa Kohser, Plaintiff-Appellant.
5. Alicia K. Haynes, Attorney for Melissa Kohser.
6. Charles E. Guerrier, Attorney for Melissa Kohser.
7. Haynes & Haynes, P.C., Attorneys for Melissa Kohser.

8. Protective Life Corporation, Defendant-Appellee (NYSE ticker: PL).

9. Michael Bell, Director of Protective Life Corporation's Reinsurance Department.

10. Cliff Neal, Director of Protective Life Corporation's Reinsurance Department.

11. Melanie McNary, Vice President and Senior Human Resources Partner, Protective Life Corporation.

12. Janell M. Ahnert, Matthew I. Penfield, Maynard Cooper & Gale, former Attorneys for Protective Life Corporation.

13. Warren B. Lightfoot, Jr., Chris Mitchell, Stephanie H. Mays, Maynard Cooper & Gale, Attorneys for Protective Life Corporation. (NYSE ticker: PL)

14. The Dai-ichi Life Insurance Company, Limited: acquired Protective Life Corporation on February 1, 2015. (TSE: 8750)

Respectfully submitted,

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Attorney for Plaintiff-Appellant,
Melissa Kohser

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant requests oral argument. This appeal raises the following legal and factual issues which will benefit from oral argument:

1. Whether, and under what circumstances, may a district court consider the so-called "honest belief" or "good faith belief" rule on summary judgment"

2. What is the appropriate procedure to be followed by the court when a party objects to a non-dispositive summary order of a magistrate judge.

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Attorney for Plaintiff-Appellant,
Melissa Kohser

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
Case Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
Federal Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix
Federal Rules of Procedure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

TABLE OF RECORD REFERENCES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

STATEMENT REGARDING ADOPTION OF
BRIEFS OF OTHER PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xv

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi
Subject Matter Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi
Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Nature of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Course of Proceedings Below. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Statement of the Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . 16

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . 18

I. The Magistrate Judge And The District Court Judge Erred By Denying Kohser's Request For Additional Discovery To Respond To Protective's Motion For Summary Judgment.. . . . . . . . . . . . . . 18

A. The Magistrate Judge Mishandled Kohser's Objections.. . . . . . . . . . 18

B. The District Court Inappropriately Relied Upon The Magistrate Judge's Erroneous *Post Hoc* Order.. . . . . . . . . . . . . . . . . . . . . . . . . . 22

C. Kohser Established Her Need For Additional Discovery.. . . . . . . . . . 22

II. The District Court Erred By Failing To Make An Independent Review Of The Material Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

III. The District Court Erred In Granting Summary Judgment To Protective.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

A. The Record Establishes That Protective Failed To Follow Its Own Procedures Before Demoting And Terminating Kohser.. . . . 37

B. The District Court Relied Upon Improper Inferences.. . . . . . . . . . . . . 43

C. The Record As A Whole Establishes A Convincing Mosaic of Discrimination.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

IV. The District Court Erred In Applying The "Honest Belief" or "Good Faith Belief" Rule.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

## TABLE OF CITATIONS

**Case Citations:**


*Abdulla v. Klosinski*, 898 F.Supp.2d 1348 (S.D. Ga. 2012), *aff'd*, 523 F. Appx. 580 (11th Cir 2013). . . . . 31

*Adams v. Laboratory Corp. of America*, 2012 WL 370262 (N.D. Ga. 2012). . . . 33

*Ashmore v. Secty, Dept. of Transp.*, 503 Fed. Appx. 683 (11th Cir. 2013). . . . . . . 21

*Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). . . . . 21

*Bass v. Bd. of County Comm'rs, Orange County*, 256 F.3d 1095 (11th Cir. 2001) . . . . . 41

*Bd. of Tr. v. Garett*, 531 U.S. 356 (2001). . . . . 55

*Bienkowski v. Am Airlines, Inc.*, 851 F.2d 1502 (5th Cir. 1988). . . . . . . . . 45, 46, 48

*Caribbean Owner's Ass'n , Inc. v. Great American Ins. Co. of New York*, 2009 WL 857439 (S.D. Ala. 2009). . . . . 33

*Carmical v. Bell Helicopter Textron, Inc.*, 117 F.3d 490 (11th Cir. 1997). . . . . . . 16

*Connor v. Sun Trust Bank*, 546 F.Supp. 2d 1360 (N.D. Ga. 2008). . . . . 41

*Duncan v. Fleetwood Motor Homes*, 518 F.3d 486 (7th Cir. 2008). . . . . 50

*Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466 (11th Cir. 1991). . . . . 50

*Epperly v. Lehmann Co.*, 161 F.R.D. 72 (S.D. Ind. 1994). . . . . 20

*F.T.C. v. National Urological Group, Inc.*, 645 F.Supp.2d 1167 (N.D. Ga. 2008) . . . . . 33

*Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559 (11th Cir. 1990). . . . . . 30

*Frazier v. Doosan Infracore Int'l, Inc.*, 479 F. App'x 925 (11th Cir. 2012). . . . . . 30

*Gay v. U.S.*, 408 F.2d 923 (8th Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). . . . . . . . . . . . . . . . . . . . . . . . . 54

*Hill v. Seaboard Coast Line R.R.*, 885 F.2d 804 (11th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507 (11th Cir. 1990). . . . . . . . . . . . . . . . 35

*Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507 (11thCir. 1990). . . . . . . . . . . . . . . 19

*Jones v. City of Columbus, Georgia*, 120 F.3d 248 (11th Cir. 1997). . . . . . . . . . . 29

*Jones v. Secord*, 684 F.3d 1 (1st Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Littlejohn v. Shell Oil Co.*, 483 F.2d 1140 (5th Cir.) (*en banc*), *cert. denied*, 414 U.S. 1116 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005). . . . . . . . . . . . . . . 44

*Macort v. Prem, Inc.*, 208 F. App’x 781 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . 36

*Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . 35

*Rachid v. Jack In The Box, Inc.*,376 F.3d 305 (5th Cir. 2004). . . . . . . . . . . . . . . . 45

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). . . . . . . . . . . . . 53

*Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7 (1st Cir. 2007). . . . . . . . . . . . . . . . . 21

*Ross v. Corporation of Mercer University*, 506 F.Supp.2d 1325 (M.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sieminski v. Transouth Fin. Corp.*, 216 F.3d 945 (11th Cir. 2000). . . . . . . . . . . . . 16

*Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865 (11th Cirl. 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . )29, 30

*Thomas v. Eastman Kodak Co.*, 183 F.3d 38 (1st Cir. 1999). . . . . . . . . . . . . . . . . 54

*Tucker v. Housing Authority of Birmingham Dist.*, 507 F.Supp.2d 1240 (N.D. Ala. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*U.S. v. Steinhilber*, 484 F.2d 386 (8th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . 51

*U.S. v. Wilson*, 853 F.2d 606 (8th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988). . . . . . . . . . . . . . . . . . 54

*Wingster v. Head*, 318 Fed. Appx. 809 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . 29

*WSB-TV v. Lee*, 842 F.2d 1266 (11th Cir.1988). . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Federal Statutes:**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

28 U.S.C. § 1343(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

28 U.S.C. § 636(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

29 U.S.C. § 633(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Federal Rules of Procedure:**

Rule 4(a)(1)(A) Federal Rules Appellate Procedure. . . . . . . . . . . . . . . . xvi

Rule 25.2-1 11th Cir. Rules of Procedure. . . . . . . . . . . . . . . . . . . . . . ii

Rule 26(a)(1)(A)(i) Federal Rules Civil Procedure.. . . . . . . . . . . . . . . . . . . . 32

Rule 28-1 11th Cir. Rules of Procedure. . . . . . . . . . . . . . . . . . . . . 58

Rule 28-1 11th Cir. Rules of Procedure. . . . . . . . . . . . . . . . . . . . . 58

Rule 32(a)(7)(B)(i) Federal Rules Appellate Procedure. . . . . . . . . . . . . . . . . 58

Rule 32(a)(7)(B)(i) Federal Rules Civil Procedure.. . . . . . . . . . . . . . . . . . . 58

Rule 32(a)(7)(B)(iii) Federal Rules Appellate Procedure. . . . . . . . . . . . . . . . . 58

Rule 37(c)(1) Federal Rules Civil Procedure.. . . . . . . . . . . . . . . . 31, 32

Rule 56(d) Federal Rules Civil Procedure.. . . . . . . . 20, 21, 29, 31, 32

Rule 72(a) Federal Rules of Civil Procedure. . . . . . . . . . . . 5, 18, 19

**Other Authorities:**

Linda Hamilton Krieger & Susan T. Fiske, *Behavioral Realism in Employment Discrimination Law: Implicit Bias & Disparate Treatment*, 94 Cal. L. Rev. 997 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

## TABLE OF RECORD REFERENCES


| | | |
|---|---|---|
| Doc. 1 | Complaint. | 2 |
| Doc. 5 | Answer. | 2 |
| Doc. 11 | Scheduling Order. | 2, 4, 22, 31 |
| Doc. 13 | Notice of Mediator Selection. | 3 |
| Doc. 14 | Motion To Extend Mediation Deadline. | 3, 26 |
| Doc. 15 | Status Report. | 4, 27, 32 |
| Doc. 17 | Motion for Summary Judgment. | 4, 28 |
| Doc. 18 | Defendant's Partial Evidentiary Submission. | 4 |
| Doc. 18-1 | Kohser Deposition. | 7-15, 38 |
| Doc. 18-2 | McNary 30(b)(6) Deposition. | 24 |
| Doc. 18-3 | McNary deposition. | 11, 15, 16, 38, 39 |
| Doc. 18-4 | Bell 30(b)(6) Deposition. | 11, 14, 15, 24, 40 |
| Doc. 18-5 | Bell Deposition. | 8-10, 12, 13, 15, 38 |
| Doc. 18-6 | McNary Declaration.. | 10, 11, 15 |
| Doc. 18-7 | Neal Declaration. | 13, 28 |
| Doc. 18-11 | Presswood declaration. | 28 |
| Doc. 19 | Defendant's Brief on Summary Judgment. | 4, 14, 28, 42, 44 |

Doc. 20 Defendant's Motion For Extension of Time To File Evidentiary Material. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Doc. 21 Defendant's Additional Evidentiary Material. . . . . . . . . . . . . . . . . . . 4

Doc. 21-1 Plaintiff's Exhibits.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Doc. 21-2 Plaintiff Exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Doc. 21-3 McNary 30(b)(6) deposition. . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Doc. 21-4 Exhibits to 30(b)(6) deposition. . . . . . . . . . . . . . . . . . . . . . . 15, 16, 39

Doc. 21-5 Exhibits to 30(b)(6) Deposition.. . . . . . . . . . . . . . . . . 11, 14, 15, 37, 38

Doc. 21-6 Exhibits to 30(b)(6) Deposition.. . . . . . . . . . . . . . . . . . . 11, 12, 38, 39

Doc. 21-7 Exhibits to 30(b)(6) Deposition.. . . . . . . . . . . . . . . . . . . . 10-12, 38, 47

Doc. 21-8 Bell Declaration.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9-11, 13

Doc. 22-7 Exhibit to Motion To Extend Discovery. . . . . . . . . . . . . . . . . . . 22, 23

Doc. 22-8 Exhibit To Motion To Extend Discovery.. . . . . . . . . . . . . . . . . . 22, 23

Doc. 22 Plaintiff's Motion To Extend Discovery Deadline. . . . . . . . . . . . 5, 19

Doc. 23 Opposition To Motion To Extend Discovery.. . . . . . . . . . . . . . . . 27, 32

Doc. 23-1 Exhibit to Opposition To Motion To Extend Discovery. . . . . . . . . . 24

Doc. 23-10 Exhibit to Opposition To Motion To Extend Discovery. . . . . . . . . . 24

Doc. 25 Plaintiff's Objections To Order of February 27, 2013.. . . . . . . . . 5, 19

Doc. 25-1 Exhibit to Objections.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25, 27

Doc. 26 Plaintiff's Motion to Defer Ruling. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Doc. 29 Order of May 21, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 20, 32

Doc. 33 Plaintiff's Objections to Order of May 21, 2013. . . . . . . . . . . . . . . . . 6

Doc. 34 Reassignment of case to Magistrate Judge England. . . . . . . . . . . . . . . 6

Doc. 37 Memorandum Opinion and Order On Discovery. . . . . . . . . . . 6, 31, 32

Doc. 44 Plaintiff's Opposition to Summary Judgment. . . . . . . . . . . . . . 6, 11-16

Doc. 44-4 Plaintiff's Evidentiary Submission. . . . . . . . . . . . . . . . . . . . . . 10, 11

Doc. 44-5 Declaration of Kohser. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14-16

Doc. 48 Defendant's Reply in Support of Summary Judgment. . . . . . . . . 10, 11

Doc. 58 Memorandum Opinion re: Motions to Strike.. . . . . . . . . . . . . . . . . . . 6

Doc. 59 Report and Recommendation on summary judgment. . . . . 6, 40, 42-46, 48, 49

Doc. 60 Plaintiff's Objections to Report and Recommendation. . . . . . . 7, 35-37

Doc. 61 Order of Reassignment to Judge Hopkins. . . . . . . . . . . . . . . . . . . . . . 7

Doc. 63 Memorandum Opinion on Summary Judgment. . . . 7, 36, 43, 45-47, 51

Doc. 64 Final Judgment Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

Doc. 68 Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi, 7

Docket Entry of September 17, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 25

Docket Entry of October 11, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Docket Entry of October 24, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Docket Entry of December 12, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Docket Entry of December 17, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Docket Entry of January 23, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Docket Entry of February 27, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

Docket Entry of June 28, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Docket Entry of May 24, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Docket Entry of August 9, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES

The Plaintiff-Appellant does not adopt any portion of the brief of any other party to this appeal.

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Attorney for Plaintiff-Appellant
Melissa Kohser

# STATEMENT OF JURISDICTION

## Subject Matter Jurisdiction

This action was filed in the United States District Court for the Northern District of Alabama, Southern Division. Subject matter jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3), 1367, and 29 U.S.C. § 633(c).

## Appellate Jurisdiction

Jurisdiction is founded upon 28 U.S.C. § 1291. The District Court entered Final Judgment on March 25, 2015. (Doc. 64.) Plaintiff filed her Notice of Appeal on April 17, 2015. (Doc. 68.) This appeal is timely filed because Plaintiff's Notice of Appeal was filed within 30 days of the entry of judgment. *See* Rule 4(a)(1)(A), Fed. Rules Appell. Proc.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the Magistrate Judge err by ignoring Plaintiff's Rule 72(a) objections to his order denying Plaintiff's Rule 56(d) motion and treating them as a motion to reconsider rather then refer them to the District Court for consideration and review?

2. Did the District Court and the Magistrate Judge err by failing to permit Plaintiff to take additional discovery necessary to respond to Defendant's dispositive motion?

3. Did the District Court and the Magistrate Judge misapply the summary judgment standard by resolving factual disputes and drawing inferences in favor of the movant?

4. Did the District Court err in failing to make a *de novo* determination of the portions of the Magistrate Judge's Report and Recommendation to which objection was made?

5. Did the District Court err in concluding that comments made by Plaintiff's employer concerning her alleged unwillingness or inability to adapt to change, in addition to the additional evidence concerning her treatment in the workplace, are not sufficient to defeat Defendant's motion for summary judgment as to Plaintiff's age and sex discrimination claims?

6. Did the District Court and the Magistrate Judge err in applying the "honest belief" or "good faith belief" rule at summary judgment?

## STATEMENT OF THE CASE

### Nature of the Case

Melissa Kohser ("Kohser") initiated this job discrimination case against Protective Life Corporation ("Protective") on November 15, 2015. (Doc. 1.) Her complaint contained seven counts: Count One for discrimination under the federal Age Discrimination in Employment Act ("ADEA"); Count Two for discrimination under the Alabama Age Discrimination in Employment Act ("AADEA"); Count Three for race discrimination, harassment, and retaliation under 42 U.S.C. § 1981; Count Four for gender discrimination under Title VII; Count Five for violations of the Equal Pay Act; Count Six for negligent and wanton hiring, training, supervision, and retention; and Count Seven for conversion. All of these claims arise out of Protective's treatment of Kohser during her employment and culminating with her demotion and subsequent dismissal from the company. (Doc. 1, ¶¶ 11 - 34.)

### Course of Proceedings Below

Kohser filed her Complaint on November 15, 2011. (Doc. 1.) Protective responded with an Answer on December 21, 2011. (Doc. 5.) Magistrate Judge Armstrong entered the Scheduling Order on February 27, 2012. (Doc. 11.) Pursuant to the terms of this Order, all discovery was to be completed by September 28, 2012, with dispositive motions filed by November 1, 2011. *Id.*

On September 17, 2012, Judge Armstrong, *sua sponte*, referred the parties to Mediation pursuant to the Court's Alternative Dispute Resolution Plan. (Docket Entry of 9/17/2012.) Pursuant to this entry, "[t]his matter and all unexpired deadlines are STAYED until the mediation is completed. Once the mediation is completed the time remaining on any stayed deadlines will begin to run again." *Id.* The parties were engaged in the final stages of discovery when he issued this Order. On October 1, 2012, Protective advised Judge Armstrong of the name of the mediator. (Doc. 13.) Ten days later Judge Armstrong made another docket entry instructing the parties to mediate the matter within 30 days. (Docket Entry of 10/11/2012.)

Subsequently, the parties learned that the agreed-upon mediator was unable to mediate the case. While the parties were able to locate an alternative mediator, they were not able to mediate the case within the deadline established by Judge Armstrong. Consequently, the parties sought (Doc. 14), and were granted (Docket Entry of 10/24/2012), an extension until December 11, 2012.

On December 12, 2012, Judge Armstrong noted that the deadline for mediation had expired and directed the parties to file a status report. (Docket Entry of 12/12/2012.) The parties filed a Joint Status Report on December 14, 2012, advising the Court that the mediation was held on December 4, 2012, and that it was unsuccessful. The parties jointly asked Judge Armstrong to schedule a status

conference in January, 2013. (Doc. 15.) This was consistent with the provisions of the original Scheduling Order which noted that an additional conference would be scheduled after January, 2013. (Doc. 11 at 2.)

In response, Judge Armstrong issued another Docket Entry: "the motion for a status conference is DENIED. Per this court's previous orders, the scheduling order deadlines that had not expired as of 9/17/12 began to run again after 12/4/12 (the date of the mediation). The discovery deadline has now expired. The new dispositive motion deadline is 1/17/12 [sic]." (Docket Entry of 12/17/2012.) Pursuant to the Scheduling Order, the "motion for summary judgment and supporting brief and evidentiary materials" were due on January 17, 2013. (Doc. 11 at 4.) More particularly, the Scheduling Order provided that "[t]he parties must file with the Clerk of Court, simultaneously with their briefs, all evidentiary materials (*e.g.*, affidavits, exhibits, depositions, or other products of discovery) relied upon in support of or opposition to summary judgment motions ... ." *Id.* at 9. Kohser's responsive submission was due not later than 21 days later. *Id.* at 4.

Protective filed its motion for summary judgment and brief in support on January 17, 2013. (Docs. 17; 19.) While some evidentiary material in support of this motion was filed on January 17, 2013 (Doc. 18), Protective filed substantial additional evidentiary material one day later (Doc. 21), along with a motion to extend

the time to file this material. (Doc. 20.) On January 23, 2013, Judge Armstrong granted Protective's motion to file its evidentiary material out of time. (Docket Entry of 1/23/2013.) Consequently, Protective's motion for summary judgment, along with its supporting evidentiary material, was not finally complete until January 18, 2013.

On February 8, 2013, 21 days after Protective filed its final evidentiary submission, Kohser filed a motion to extend the discovery deadlines and the deadline for filing dispositive motions by sixty days. (Doc. 22.) On February 27, 2013, Judge Armstrong, without opinion, denied Kohser's motion. (Docket Entry of 2/27/2013.)

Kohser filed her Rule 72(a) objections to this Order on March 6, 2013 (Doc. 25), along with a motion to defer ruling on the pending motion for summary judgment (or for additional time in which to respond) until such time as the District Court has dispensed with her Objections to the Order of February 27, 2013. (Doc. 26.)

Rather than direct the Clerk of Court to randomly select a district judge to consider Kohser's objections, Magistrate Judge Armstrong used Kohser's objections as an opportunity to enhance and expand upon his earlier blanket denial. In a new order filed in response to Kohser's objections (Doc. 29), Magistrate Judge Armstrong recounts his denial of the parties' request for a status conference, summarizes his understanding of the intervening events, and explains his reasons for denying Kohser's motion to extend discovery. Magistrate Judge Armstrong concluded this

Order by advising the parties that they had fourteen days to file objections and giving Kohser the option of either adopting her previous objections or supplementing them, *id.* at 2, advice not included in his initial denial.

On June 17, 2013, after receiving an extension from Magistrate udge Armstrong (Docket Entry of 5/24/2013), Kohser renewed her objections. (Doc. 33.) Two days later this case was reassigned to Magistrate Judge England. (Doc. 34.) Magistrate Judge England directed the Clerk of Court to select a district judge to consider Kohser's objection on June 28, 2013. (Docket Entry of 06/28/2013.)

On August 8, 2013, Judge Hopkins ruled on Kohser's objections. The Court concluded that Judge Armstrong's decision to deny Kohser's motion to extend discovery was not clearly erroneous and returned the case to Judge England. (Doc. 37.)

Magistrate Judge England established a new deadline for Kohser to respond to Protective's motion for summary judgment. (Docket Entry of 08/09/2013.) Kohser then filed her response to Protective's motion for summary judgment. (Doc. 44.) On January 7, 2015, Magistrate Judge England issued a Memorandum Opinion and Order disposing of various motions directed to the admissibility of evidence submitted by the parties. (Doc. 58.) One week later, Magistrate Judge England issued his Report and Recommendation, recommending that summary judgment be granted. (Doc. 59.)

Kohser filed her objections to Magistrate Judge England's Report and Recommendation. (Doc. 60.) The case was then assigned to Judge Hopkins (Doc. 61), who, on March 25, 2015, sustained one of Kohser's objections, but agreed with Magistrate Judge England that Protective was entitled to summary judgment. (Doc. 63.) Kohser filed her notice of appeal on April 17, 2015. (Doc. 68.)

**Statement of the Facts**

Kohser is a Caucasian female, born in December 1961. (Doc. 18-1 at 4, 8, 9, 66.) Protective is an insurance company. (Doc. 21-8 at ¶ 2.) Its business has two parts: direct insurance and reinsurance. Direct insurance involves policies sold directly to individuals. Reinsurance involves the purchasing of insurance to cover all or part of the risks associated with direct insurance. (Doc. 18-1 at 15.) The reinsurance business involves interaction with other insurance companies. *Id.*

Protective hired Kohser in 1981. (Doc. 18-1 at 9.) Over her long, 29 year, career with Protective, Kohser held positions of ever-increasing responsibility. *Id.* at 9, 11, 14-15. In 2003, Protective re-assigned Kohser to the Reinsurance Administration Department and promoted her to the position of Manager of Reinsurance Administration. *Id.* at 15. There, Kohser began learning the processes related to reinsurance. *Id.* at 15-17. As the Manager of the Reinsurance Department, she "functionalized" the department by cross-training the employees and developing

written procedures to be used by the department so that the work could be kept up to date. *Id.* at 16. At that time, Protective used a single computer system for managing its reinsurance work, the "Homegrown" system. Kohser, and the employees she supervised, managed Protective's numerous accounts on that system. *Id.* at 17-18.

At some time after 2003, Protective acquired West Coast Life, a California-based insurance company. (Doc. 18-1 at 17.) From the time of its acquisition until 2008, this business was handled out of Protective's West Coast office. *Id.* West Coast Life used a different computer system for managing its business: TAI.net. *Id.* at 18. That account was managed by an individual named Thanh Pham. *Id.*

Sometime prior to 2008, administration of the West Coast Life business, along with Pham, were moved to the Reinsurance Department in the Birmingham offices of Protective. (Doc. 18-1 at 18; Doc. 18-5 at 11-12.) This created two separate "teams" within the Reinsurance Department: one team, managed by Pham, was responsible only for the management of the West Coast Life business. The other team, managed by Kohser, was responsible for the management of all of Protective's other reinsurance business, involving dozens of companies. (Doc. 18-1 at 18; Doc. 18-5 at 11-12; Doc. 44-5 at ¶¶ 12 - 13.)

As a result of this consolidation, two computer systems were being used to manage the reinsurance work: the Homegrown system and TAI.net. The main

difference between the Homegrown system and the TAI.net system is that various statements and reports must be generated manually on the Homegrown system, while these statements and reports are automatically generated by the TAI.net system. (Doc. 18-1 at 18.) West Coast Life managed using the TAI.net system (Pham was not familiar with the Homegrown system.) *Id.* While Plaintiff continued to manage most of her business using the Homegrown system, she was also familiar with the TAI.net system. She knew how to navigate the TAI.net system and find information on it when needed. (Doc. 18-1 at 27.) By late 2008, all new reinsurance business went on the TAI.net system and no new business went into the Homegrown system. (Doc. 18-5 at 32.)

In March 2008, Protective hired Michael Bell (born 1952) as Vice President to head the Reinsurance Administration Department (Doc. 18-1 at 18; Doc. 18-5 at 5; Doc. 21-8 at ¶ 1), and to merge the two reinsurance teams under a single department head. (Doc. 18-5 at 11.) Kohser and Pham began reporting to Bell. (Doc. 18-1 at 19; Doc. 18-5 at 11.) In August, 2008, Bell terminated Pham and eliminated her position as Vice President. (Doc. 18-5 at 13.) Bell claims he took this action because he did not need another vice president under him. *Id.*

The TAI-side employees reported directly to Bell and the daily management of the West Coast and other accounts on the TAI.net system was left to his team

members. (Doc. 18-1 at 19.) Kohser continued to be responsible for the accounts which were managed using the Homegrown system. *Id.* Kohser was the oldest employee in the department.

Early in 2009, Bell promoted Kohser to the position of Director of the entire Reinsurance Department. (Doc. 18-1 at 19; Doc. 21-8 at ¶ 6; Doc. 18-6 at ¶ 10.) Protective increased Kohser's salary to $60,000 per year as a result of this promotion. *Id.* After her promotion, Kohser continued to be responsible for all of the accounts on the Homegrown system. *Id.* At around this same time, Bell concluded that the TAI side needed a separate manager who had experience with reinsurance, securitizations and the TAI system. (Doc. 21-8 at ¶ 5.) Protective explained to the EEOC that Bell, who was in his late fifties, was concerned about his retirement and was looking to hire a possible successor. (Doc. 21-7 at 3; Doc. 48 at 24.)

In April, 2009, Bell, on behalf of Protective, extended an offer to Cliff Neal to fill a second Director position for the Reinsurance Department. (Doc. 44-4 at 2.) Bell hired Neal, someone he had known from previous industry contacts. (Doc. 18-5 at 13-14.) Because Neal had some familiarity with the TAI.net program from a previous job (Doc. 18-6 at 5-6), Bell assigned Neal responsibility over the TAI.net system and its employees and Kohser responsibility over the Homegrown system and its employees. (Doc. 18-1 at 20.) Neal was not knowledgeable about the Homegrown

system. (Doc. 18-1 at 35.) Neal and Kohser were the same grade level (115) when Neal started. (Doc. 18-4 at 31; Doc. 48 at 19.)

Protective paid Neal $80,000 per year to start as Director, $20,000 more than it was paying Kohser to perform her duties as Director. (Doc. 18-1 at 19; Doc. 21-8 at ¶ 6; Doc. 18-6 at ¶ 10; Doc. 44-4 at 2.) Protective also paid Neal a $24,000 signing bonus. *Id.* At the end of 2009, Bell rated Kohser's performance as Exceeds Expectations in twelve categories and Meets Expectations in seven categories. His overall rating of her was "Exceeds Expectations." (Doc. 21-5 at 19.)

In 2010, Bell found himself in a dilemma. Bell had promised Neal that he would be promoted quickly. (Doc. 21-6 at 65; Doc. 18-3 at 38.) But, having paid Neal a salary greater than that paid to Kohser, Bell's department was facing increased expenses at the same time as he was being pressured to reduce spending.

For a number of years preceding Bell's arrival at Protective, the company had begun looking to replace the Homegrown program with a new, up-to-date system. Bell was aware of this need but understood that converting to a new system would be complicated. (Doc. 21-7 at 39-58.) Based on initial costs, Bell had to seek and obtain approval from Protective's Governance Committee before proceeding with the project. (Doc. 18-1 at 40; Doc. 44 at 27.) In the proposal to the Governance Committee, Bell recommended a reduction of three full-time positions. (Doc. 21-7

at 39-58.) Once completed, all of the Reinsurance Administration business would be on a TAI system and every employee in the department would have to use that system. (Doc. 18-1 at 36; Doc. 44 at 27.) When initially proposed, Kohser expressed resistance to the project to Bell and Wendy Johnson because she was being excluded from the discussions about how the process would work and the research which had been done. (Doc. 18-1 at 37.) Nevertheless, Kohser wanted to be on the TAI system because the Homegrown system was antiquated and the TAI system would result in easier processing. (Doc. 18-1 at 19.)

Beginning in late 2010 or early 2011 through August 2012, Protective was moving all of its reinsurance business from the Homegrown system to a TAI system. This was known as the "gorilla project." (Doc. 18-1 at 36; Doc. 21-6 at 18; Doc. 21-7 at 39-58.) As of January 2013, the gorilla project was mostly complete with less than 5% of accounts remaining on the Homegrown system. (Doc. 18-5 at 18-20; Doc. 44 at 27.) Indeed, the conversion, which was begun in late 2010, was not expected to be completed until September, 2013. (Doc. 18-5 at 18-20.) In January 2010, Bell decided to reorganize the Reinsurance Department. Again, rather than continue to have one group deal with the Homegrown accounts and another group deal with the TAI.net accounts, Bell divided the department into two groups based upon function: the Red Group to deal with administrative matters, and the Blue Group to deal with

technical matters. (Doc. 21-8 at ¶ 9; Doc. 44 at 30.) Bell placed Kohser in charge of the Red Group and Neal in charge of the Blue Group. *Id.* Certain tasks, which had previously been Neal's responsibility, now became Kohser's responsibility. Neal assumed certain technical responsibilities from Kohser. This meant that Kohser would be required to deal with both the Homegrown and TAI.net programs. (Doc. 18-1 at 27, 33.) On the other hand, Neal only had to deal with the TAI.net program. Because Neal was not qualified to deal with technical issues related to the Homegrown system, those issues remained the responsiblity of the IT department. (Doc. 18-1 at 35-36.)

At this same time, Protective brought the administration of Chase, another insurance business which Protective had acquired, to Birmingham. (Doc. 18-1 at 24; Doc. 18-5 at 16.) This involved becoming familiar with both the administrative and technical aspects of a third reinsurance system (an older version of TAI mainframe) and integrating that system into the new TAI mainframe system. (Doc. 18-1 at 25; Doc. 18-5 at 15-16.) The TAI systems differ greatly from the Homegrown system. (Doc. 18-7 at ¶4.) Despite Neal's experience with these systems and Kohser's lack of familiarity with them, Bell gave Kohser significant responsibility for the conversion of the Chase business, which was to take place at the beginning of 2011. (Doc. 18-1 at 24-25; Doc. 44 at 26.)

By the fall of 2010, Kohser's team was overwhelmed by the amount of work assigned to her by Bell. In addition to managing administrative matters under both the Homegrown and TAI.net systems and the Chase conversion, in October, before going on vacation, Bell had assigned to Kohser the task of preparing a narrative required by Sarbanes-Oxley pertaining to the Chase program. (Doc. 18-1 at 32, 47; Doc. 21-1 at 79-81.) Because this narrative required a technical description as to how the TAI system and the process would work once converted, Kohser felt that Neal would be the appropriate person to prepare the narrative. (Doc. 44 at 31.)

In drafting the SOX narrative for the Chase work, Kohser copied the SOX narrative from the one for the TAI.net system "except for the few changes that needed to be made on it." (Doc. 18-1 at 45, 48.) Bell was critical of Kohser for doing this (Doc. 19 at 13), but the record establishes that this is exactly what Kosher was asked to do. (Doc. 21-2 at 33; Doc. 44-5 at 27.) Kohser had to ask Neal for input on technical aspects of the TAI systems and interface because she was not certain of some parts of the narrative about the technical aspects of the systems. (Doc. 18-1 at 44, 48.)

In October 2010, Bell expressed concern Kohser was "[unable] to complete the high level narrative associated with PLICO administrative processes for the Chase insourcing." (Doc. 21-5 at 43; *accord* Doc. 18-4 at 8.) Despite this concern, Bell,

himself, was unavailable to assist with this project because he went on vacation. (Doc. 18-1 at 47.)

After completing the SOX task, Kohser sent the narrative to Bell. Bell was critical of Kohser's work-product because of certain problems which he identified concerning the technical portion of the Chase conversion. (Doc. 21-5 at 43; Doc. 18-4 at 8.) Of course, technical knowledge concerning the TAI.net system had been Neal's responsibility and was his strength. (Doc. 18-6 at 5-6.)

Upon returning to work after his vacation, Bell demoted Kohser, removed all of her managerial duties, and made her report to Neal. (Doc. 18-1 at 50; Doc. 18-5 at 42.) Bell designated Wendy Johnson, a substantially-younger, African-American female, to assume Kohser's duties. (Doc. 18-3 at 13; Doc. 21-4 at 47.)

Neither Bell nor Neal gave Kohser a new job description nor established new goals for her to achieve in her new position. (Doc. 44-5 at ¶¶ 29, 31, 33.) In January, 2011, Neal and Bell completed Kohser's 2010 performance evaluation and met with her on January 27 to go over the evaluation. (Doc. 18-1 at 56; Doc. 21-2 at 75-83; Doc. 44 at 37.) Despite the fact that Kohser had not been performing the job of Director since she was demoted in October, 2010, Kohser's evaluation focused on items which relate solely to her previous job and not the one which she had been performing since October, 2010. (Doc. 18-1 at 57; Doc. 21-2 at 75-83.)

Each of the items identified on her evaluation had been used to justify her earlier October demotion. Three of the items related solely to duties which she no longer had.

After the meeting with Kohser, Bell and Neal decided to terminate Kohser's employment (Doc. 18-3 at 26; Doc. 44 at 39). Kohser was replaced by Richard Mason (born 1975) and Tonya Pettis (born 1977), both substantially younger than Kohser. Both were promoted to Director level 115 positions as a result. (Doc. 18-3 at 10-11; Doc. 21-4 at 47-48.) Bell and Neal did not utilize any progressive disciplinary procedure prior to terminating Kohser. (Doc. 44-5 at ¶ 28.)

**Statement of the Standard of Review**

The Court of Appeals reviews a grant of summary judgment *de novo*, applying the same legal standards as the district court, viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. *Sieminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)

The Court of Appeals reviews a district court's ruling on a Rule 56(d) motion for abuse of discretion. *Carmical v. Bell Helicopter Textron, Inc.*, 117 F.3d 490, 493 (11th Cir. 1997).

## SUMMARY OF ARGUMENT

This appeal involves both procedural and substantive errors. Procedurally, the

Magistrate Judge erred in his response Kohser's objections to his denial of her motion to conduct discovery. The Magistrate Judge denied Kohser's motion through a cursory docket entry. Kohser lodged her objections pursuant to Rule 72(a). Rather than refer these objections to the Clerk of Court for consideration by a district court judge, as required by the rules, the Magistrate Judge improperly treated Kohser's objections as an invitation for him to reconsider his earlier denial. The Magistrate Judge then entered a new order providing *post hoc* justifications for summarily denying Kohser's motion. This was improper.

Kohser again objected and the District Court upheld the Magistrate Judge's denial, relying substantially upon the Magistrate Judge's *post hoc* justifications.

Even if the Magistrate Judge had not erred by ignoring the procedures applicable to objections, his decision was an abuse of discretion. Kohser demonstrated that her ability to complete discovery during the discovery period had been hampered, in part by the order of the Magistrate Judge, staying all proceedings and referring the case to mediation in the midst of the discovery period.

Kohser had been diligent in her efforts to conduct discovery and was surprised and prejudiced by the evidence submitted by Protective in its motion for summary judgment. Without being able to complete her discovery, Kohser was unable to respond to various factual allegations made by Protective.

The District Court also erred in granting summary judgment based upon the Magistrate Judge's Report and Recommendation. The District Court erred in concluding that Protective's failure to abide by its own policies and procedures when it demoted and terminated Kohser was not evidence of pretext. The Court also erred in concluding that the "good faith belief" rule is available to a movant at the summary judgment stage. Ultimately, the District Court erred in concluding that the evidence, as a whole, when viewed in a light most favorable to Kohser, justified summary judgment as to her sex and age discrimination claims.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. The Magistrate Judge And The District Court Judge Erred By Denying Kohser's Request For Additional Discovery To Respond To Protective's Motion For Summary Judgment.

#### A. The Magistrate Judge Mishandled Kohser's Objections.

Rule 72(a), Fed. R. Civ. Proc., provides that a Magistrate Judge may decide a pretrial matter not dispositive of a party's claim or defense. In that event, "[a] party may serve and file objections to the order within 14 days after being served with a copy. ... The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The Advisory Committee Notes confirm that the last sentence of subdivision (a) "specifies that reconsideration of a magistrate's order, as provided for in the Magistrate's Act,

shall be by the district judge to whom the case is assigned." Advisory Committee Notes on 1983 Amendments to Fed. Rule Civ. Proc. 72.

On February 8, 2013, Kohser filed her Motion to extend discovery to respond to the evidence filed to support summary judgment and the arguments raised by Protective. (Doc. 22.) On February 27, 2013, Magistrate Judge Armstrong denied this motion. (Docket Entry of February 27, 2013.) Magistrate Judge Armstrong provided no explanation for his denial. Within the time period allowed by Rule 72(a), Kohser filed her Objections to the Order. (Doc. 25.) In her objections, Kohser noted, *inter alia*, that Magistrate Judge Armstrong had provided no explanation for denying her motion but had merely entered a Docket Text Order. (Doc. 25 at 9.)

Timely objections having been filed, the proper procedure under the rules is for the district court to consider these objections and modify or set aside any part of the order that is clearly erroneous or contrary to law. Rule 72(a), Fed. R. Civ. Proc. This procedure allows the district judge to "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11thCir. 1990). But that is not the procedure Magistrate Judge Armstrong followed. Rather than direct the Clerk of Court to assign Kohser's objections to a district court judge for consideration, Magistrate Judge Armstrong took it upon himself to treat Kohser's objections as a motion to reconsider his earlier

order. (Doc. 29.) This was not proper per the Rules of Procedure and the Magistrate's Act.

This is not an instance where the objecting party actually sought reconsideration of a magistrate judge's order. *Cf., Epperly v. Lehmann Co.*, 161 F.R.D. 72, 74 (S.D. Ind. 1994) (Rule 72(a)'s deadline for filing objections to a magistrate judge's order does not run while a motion directed to the magistrate judge to amend or reconsider his order is pending). Once Kohser filed her objections to the order of Magistrate Judge Armstrong, his jurisdiction over that order ceased. Consequently, having no jurisdiction over Kohser's objections, Magistrate Judge Armstrong's Order containing *post hoc* rationalizations for denying Kohser's motion to extend discovery was *ultra vires* and void.

Furthermore, Magistrate Judge Armstrong's Order of May 21, 2013, reads more like a justification for his previous conduct than a reasoned analysis of Kohser's motion and her grounds for conducting discovery pursuant to Rule 59. Indeed, the Order focuses primarily upon Kohser's failure to object to the Magistrate Judge's earlier Order of December 17, 2012, wherein he denied the parties motion for a scheduling conference. Magistrate Judge Armstrong concluded that, because Kohser had not moved to extend discovery before the motion for summary judgment was filed, her motion to conduct discovery in response to the summary judgment motion

was untimely. But these are two separate things and are only marginally related. Rule 56(d) recognizes that, despite the diligent efforts of the parties, there are occasions when a party will be unable to present facts essential to oppose a motion for summary judgment due to lack of discovery. The rule provides "a safety net" for parties who need further time to obtain facts essential to oppose a motion for summary judgment, *Jones v. Secord*, 684 F.3d 1, 6 (1st Cir. 2012), and serves as a way of ensuring judges will not "swing[] the summary judgment axe too hastily." *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 10 (1st Cir. 2007). While a district court may consider a party's failure to conduct *any* discovery when ruling on a motion to *extend* discovery, *Ashmore v. Secty, Dept. of Transp.*, 503 Fed. Appx. 683, 686 (11th Cir. 2013), the factors governing a Rule 59(d) motion are different. One of the things the moving party must demonstrate is the absence of evidence essential to that party's case is not the result of lack of diligence in pursuing evidence through permitted methods of discovery. *Barfield v. Brierton*, 883 F.2d 923, 932 (11th Cir. 1989).

Magistrate Judge Armstrong ignored the substance of Kohser's motion, the affidavit of her counsel explaining why the additional discovery was needed, the evidence detailing Kohser's efforts at obtaining this discovery during the discovery period, the disruption of Kohser's discovery efforts caused by the Court's mediation

order, and the other grounds supporting her motion. Rather, he used Kohser's timely objections challenging his unsubstantiated order as an opportunity to retroactively justify his conduct. This was an abuse of discretion on the part of Magistrate Judge Armstrong.

### B. The District Court Inappropriately Relied Upon The Magistrate Judge's Erroneous *Post Hoc* Order.

The District Court relied substantially upon the Magistrate Judge's belated explanation for denying Kohser's motion to support its conclusion that the Magistrate Judge did not err in refusing to permit Kohser to conduct additional discovery. This was error as the Magistrate Judge's explanation was *ultra vires*.

### C. Kohser Established Her Need For Additional Discovery.

Magistrate Judge Armstrongs' Rule 16 Scheduling Order, entered on February 27, 2012, established September 28, 2012, as the discovery deadline. (Doc. 11). Soon after exchanging initial disclosures on March 6, 2012, Kohser turned her attention to other forms of discovery. Kohser served her interrogatories and requests to produce on April 13, 2012. (Docs. 22-7; 22-8). That same day Kohser served notices of deposition for Protective's Rule 30(b)(6) representative; Clifton Neal; and Mike Bell.

Protective responded to Kohser's interrogatories and requests to produce on

May 14, 2012. (Docs. 22-7; 22-8.) While Protective agreed to produce certain documents, none were produced at that time. *Id*. On May 16, 2012, Protective promised to produce the subject documents "next week." (Doc. 25-1, Attachment A, p. 1). But the documents were not produced as promised. On June 19, 2012, Kohser sent two deficiency letters to Protective concerning the inadequate responses to the requests to produce as well its failure to produce documents related to the noticed depositions. (Doc. 25-1, Attachment B.) On June 25, 2012, Protective finally produced approximately 300 pages of documents along with supplemental responses to Kohser's discovery. (Doc. 25-1, Attachment C.) On July 6, 2012, Protective produced another 364 pages of documents, either in response to Kohser's requests to produce or as Rule 26 Supplemental Disclosures. (Doc. 25-1, Attachment D.)

So as to prepare for the depositions, on July 16, 2012, Kohser's counsel contacted Protective's counsel to make certain that Protective had produced all documents responsive to Kohser's requests to produce. (Doc. 25-1, Attachment E.) She also sought availability dates so that the depositions could be scheduled. *Id.* Protective's counsel agreed to check with the witnesses about available dates. *Id.*

On July 23, 2012, Protective's attorney notified Kohser's attorney that, after checking her schedule and the schedules of the witnesses, the only available dates were nearly six weeks hence. Protective's attorney blocked out August 28 - 31 for

depositions, to begin with the deposition of Kohser. The Parties agreed to this schedule.

On August 7, 2012, Kohser issued amended notices of depositions for: Defendant's Rule 30(b)(6) representative; Melanie McNary (an HR representative); Mike Bell, and Clifton Neal. These depositions were scheduled for August 29 and 30, following Kohser's deposition, which had been scheduled for August 27, 2012. Protective completed Kohser's deposition on August 27 as scheduled.

Protective designated both Melanie McNary and Michael Bell as its Rule 30(b)(6) representative. (Doc. 23-1; 23-10; 18-2.) Kohser began the 30(b)(6) deposition with Melanie McNary on the morning of August 29. (Doc. 18-2.) Kohser then turned to Michael Bell. (Doc. 18-4.) It soon became apparent to Kohser's counsel that Bell had not been adequately prepared to respond fully to the questions concerning the areas of inquiry for which he had been designated. The deposition was suspended until August 30 so that Bell could retrieve certain documents necessary to his testimony. Not willing to waste the remainder of the day, Kohser's counsel turned to the individual deposition of McNary, which began at 4:18 p.m. (Doc. 18-3.)

Kohser resumed the 30(b)(6) deposition of Bell on August 30 at 9:00 a.m. (Doc. 23-10). After completing that deposition, Kohser turned to the individual

deposition of Bell, beginning at 1:15 p.m. Kohser was unable to conclude that deposition by the end of the day and it was suspended at 6:00 p.m., at which time the parties agreed to reconvene on a mutually convenient date "hopefully not too long from now" to complete the deposition of Bell and to take the deposition of Clifton Neal, which had been scheduled for August 30.

Kohser's counsel began contacting Protective's counsel about completing deposition discovery on September 5, 2012. (Doc. 25-1, Attachment G.) In an e-mail of that date, Kohser's counsel inquired as to the available dates between September 5 and September 28 (the close of discovery). Kohser's counsel also noted that it may be necessary for the parties to move for an extension of the discovery deadline.

In response, Protective's counsel identified the period of September 25 - 28 as the only available dates. *Id.* Anxious to get the discovery completed, Kohser's counsel proposed earlier dates during the week of September 10, 2012. (Doc. 25-1, Attachment H.) These dates were not convenient for Protective's counsel and the parties agreed to reconvene the depositions during the last week of September. (Doc. 25-1, Attachment H.)

Before Kohser could take those depositions, however, the Court ordered the parties to mediation and stayed all unexpired deadlines until mediation was completed. (Docket Entry of September 17, 2012.) Despite the Parties' efforts to

conduct the mediation promptly, circumstances beyond their control caused a delay. On October 24, 2012, the Court granted the parties' Joint Motion to Extend Mediation Deadline until December 11, 2012. (Doc. 14).

Once the parties were ordered to mediation, discovery was suspended pending the outcome of mediation. As noted above, Kohser had encountered difficulties in scheduling any depositions. During the entire period from April, 2012, when Kohser first issued her depositions notices, through the end of discovery, Protective was able to identify only two periods of four days each, August 28-31 and September 25-28, when its corporate representative witnesses would be available. Further, even after the parties agreed on deposition dates, Kohser encountered difficulties in completing those depositions. In particular, Bell's deposition was not completed, in part because he was unable to properly respond to questions during his 30(b)(6) deposition. The deposition of Cliff Neal, Kohser's comparator and the supervisor who terminated her, was scheduled twice, but never taken due to the inability to complete the Bell deposition, the interceding mediation, and Neal's previous unavailability.

There were also difficulties in scheduling the mediation. The parties' first choice as mediator ultimately was unable to mediate the case. The parties' second choice of mediator became involved in a lengthy arbitration hearing and was unavailable to mediate this case until after mid-November. The matter was

unsuccessfully mediated on December 4, 2012.

On December 11, 2012, Kohser's counsel approached Protective's counsel about jointly moving for a status conference in January so as to get the case "back on discovery track." (Doc. 25-1, Attachment K.) Protective's counsel was amenable to "asking the Court for a scheduling conference . . . the first or second week in January in order to start the clock running on the remaining time left for discovery and to set the other remaining dates accordingly." *Id.*

On December 12, 2012, the Court ordered the parties to file a status report since the mediation deadline of December 11, 2012, had expired. On December 14, 2012, the parties filed a joint status report and, as agreed, asked the Court to set a scheduling conference in January 2013. (Doc. 15). The parties' intentions in requesting a status conference was to request a revised Scheduling Order and resume depositions before dispositive motions were due. Protective later claimed that the joint motion was not to seek a new scheduling order. (Doc. 23, p. 2). But that argument is questionable in light of Protective's earlier e-mail and the language of the joint motion: "the parties respectfully request that this court enter an order setting a scheduling conference in this matter for January 2013." (Doc 15, p. 1). If there was no need to revisit the deadlines for discovery and dispositive motions, the parties would not have needed to request a new ***scheduling*** conference.

By Order of December 17, 2012, the Court denied the joint request for a scheduling conference, declared that the discovery deadline had expired, and established January 17, 2012 [sic] as the deadline to file dispositive motions.

While Protective filed its Motion for Summary Judgment, brief in support, and some evidentiary material on January 17, 2013 (Doc. 17), substantial additional evidentiary material was filed on January 18, 2013, one day late. Upon reviewing Protective's summary judgment materials, it became apparent to Kohser's counsel that Protective's Motion for Summary Judgment relied on witnesses and exhibits that were never listed in its Initial Rule 26 Disclosures or previously produced, such as the declaration of Tamika Presswood. (Doc. 18-11.) There was a declaration from Neal, who had not been deposed. (Doc. 18-7.) Furthermore, five other individuals were identified in Protective's moving papers who were never listed in its Rule 26 disclosures or any discovery response. These individuals are: Cheryl Mayo, Darlene Lyle, Kristi Cowan, Tonya Pettis, and Steven Boyd. (Doc. 19, pp. 11, 14, 15, 16, 25, 26, 31, 32, 35, 42). Other than Neal, Kohser had no reason to believe she needed to depose these witnesses until after Protective filed its motion for summary judgment. Because discovery was disrupted by the court-ordered mediation, Kohser's first knowledge of the substance of the evidence and testimony of many of the witnesses Protective relied upon in its dispositive motion was upon receipt of the Motion for

Summary Judgment and the supporting evidence.

Rule 56, Fed. R. Civ. P., provides a shelter against entry of summary judgment for a non-movant pending additional discovery. Where the nonmoving party to a motion for summary judgment shows "that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" delay consideration of the motion for summary judgment, deny the motion, allow additional time for discovery, or issue another appropriate order. Rule 56(d), Fed. R. Civ. Proc. *Wingster v. Head*, 318 Fed. Appx. 809, 813 (11th Cir. 2009) (citation omitted). Indeed, the law in this circuit is well established: "the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion" for summary judgment. *Jones v. City of Columbus, Georgia*, 120 F.3d 248, 253 (11th Cir. 1997) (citing, *inter alia, Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870-71 (11th Cirl. 1988). The common denominator in the modern Supreme Court cases addressing summary judgment is "that summary judgment may only be decided upon an adequate record." *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir.1988).

The party opposing summary judgment is responsible for informing the court of any outstanding discovery. The opposing party may do this by filing an affidavit pursuant to Federal Rule of Civil Procedure 56(d) or through a motion or brief:

"'[T]he written representation by [the opposing party's] lawyer, an officer of the court, is in the spirit of Rule 56([d]) under the circumstances.' " *Snook*, 859 F.2d at 871 (quoting *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.) (*en banc*), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973)). *See also Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1990); *Frazier v. Doosan Infracore Int'l, Inc.*, 479 F. App'x 925, 931 (11th Cir. 2012).

Kohser was diligent in her efforts to complete discovery before the deadlines established in the initial Scheduling Order. But for the Court's intervening order sending the parties to mediation, and the nearly two month delay which followed, discovery would have been completed as scheduled. Due to reasons beyond Kohser's control, the mediation did not occur until Tuesday, December 4, 2012. At that time counsel for both parties understood that only 11 days remained to complete the depositions which had previously been scheduled. With the Christmas holidays approaching, even counsel for Protective recognized that the parties should approach the Court for a scheduling conference during the first or second week of January in order to start the clock running on the remaining time left for discovery. The Magistrate Judge pretermitted those arguments by denying the motion and ruling, without hearing from either party, that the discovery deadline had passed, effectively disabling Kohser.

Similarly, the District Court erroneously concluded that Kohser's objections had no merit, in part because she waited "until she saw the defendant's evidence offered in support of its motion for summary judgment before asking for an extension." (Doc. 37 at 14.) Of course, a motion filed under Rule 56(d) *before* a motion for summary judgment had been filed, would be premature. That is why the provision is found in Rule 56 rather than in the portion of the rules governing discovery. Furthermore, the fact that Kohser could have moved, pursuant to Rule 37(c)(1), to exclude evidence offered by witnesses not properly identified during discovery (Doc. 37 at 14), is not a grounds for denying a proper Rule 56(d) motion. Indeed, one of the grounds for denying a Rule 37(c)(1) motion is the ability of the party to cure the surprise, presumably by conducting discovery. *Abdulla v. Klosinski*, 898 F.Supp.2d 1348, 1359 (S.D. Ga. 2012), *aff'd*, 523 F. Appx. 580 (11th Cir 2013).

Once Protective filed its motion for summary judgment, Kohser's counsel assessed the evidence relied upon to support that motion and filed her Rule 56(d) motion, explaining why she needed additional time in which to complete the discovery so as to properly respond to the motion.[1] As previously noted, certain

---

[1]The Magistrate Judge claims Kohser's motion was filed one day after her opposition to summary judgment was due. He reaches this conclusion by relying upon the date that Protective filed is motion for summary judgment. But the Court's scheduling order specifically requires a party moving for summary judgment to file all supporting evidentiary materials along with the motion and brief. (Doc. 11 at 9.) While some evidentiary material was filed on January 17, a substantial volume of material was filed on January 18. Kohser's motion was filed 21 days after Protective filed the last of its evidentiary materials.

depositions had been suspended and the parties had agreed to convene at a later date. Indeed, both parties proceeded under the assumption that the Court would grant a modest extension of time in which to complete discovery. (Doc. 15.) The parties were mistaken, to the detriment of Kohser and the benefit of Protective.

The importance of being able to complete or conduct these depositions is apparent from Protective's opposition to Kohser's motion. For example, Protective argued, in part, that no further discovery was needed because various individuals were mentioned in the incomplete deposition of Mike Bell. (Doc. 23, p. 8 n. 7). But this is exactly the point. Kohser had not completed her deposition of Bell nor conducted the deposition of Neal. She did not have a full opportunity to pursue through discovery the role each person played in this case, either through Bell's deposition or that of others.

Protective also argued that each of the individuals identified in Kohser's motion were properly identified either in its Initial Disclosures or during depositions.[2] Protective's argument is without merit. Rule 26(a)(1)(A)(i) requires a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that

---

[2]Magistrate Judge Armstrong noted Kohser's argument "incidentally." (Doc. 29 at p. 2 n. 1.) The District Court ignored Kohser's argument as a grounds for granting a Rule 56(d) motion, suggesting that Kohser should have moved to exclude the evidence under Rule 37(c)(1). (Doc. 37 at 14.)

information - that the disclosing party may use to support its claims or defenses." Admittedly, Protective's Initial Disclosures does include a list of individuals, as well as a general reference to "individuals listed by the Plaintiff in Plaintiff's Initial Disclosures." But at no time did Protective provide the subjects of the information which each such witnesses possessed. Further, the mere mention of a witness during a deposition is not sufficient to meet the Rule 26 standard. *Adams v. Laboratory Corp. of America*, 2012 WL 370262, *4 (N.D. Ga. 2012); *Caribbean Owner's Ass'n , Inc. v. Great American Ins. Co. of New York*, 2009 WL 857439 , *2 (S.D. Ala. 2009); *F.T.C. v. National Urological Group, Inc.*, 645 F.Supp.2d 1167, 1179 (N.D. Ga. 2008) (party must supplement disclosures concerning identify of other witnesses and discoverable information known by witnesses unless that information was otherwise made known to the other parties during the discovery process or in writing); *cf Ross v. Corporation of Mercer University*, 506 F.Supp.2d 1325, 1343-1344 (M.D. Ga. 2007); It was not for Kohser to depose every person mentioned during discovery in an effort to ferret out which witnesses Protective intended to rely upon to support its defense. Rule 26 obligated Protective to provide that information as part of its disclosures, either initially or as supplemented. Protective failed to do so.

By not extending the discovery period to allow Kohser to complete her

discovery, the Court's Orders, collectively, had a disproportionately prejudicial effect on Kohser's ability to respond to Protective's dispositive motion. Of course, Protective had no need to continue discovery because it had already deposed Kohser and could simply produce affidavits of its own witnesses; whereas, Kohser had no access to these witnesses outside of a deposition. Kohser was diligent in her efforts to complete discovery before the deadlines established in the initial Scheduling Order. But for the Magistrate Judge's intervening order sending the parties to mediation, discovery would have been completed as scheduled.

The Magistrate Judge abused his discretion in failing to permit Kohser to conduct limited discovery necessary to respond to Protective's motion for summary judgment and the District Court erred when it overruled Kohser's objections. The District Court's order denying Kohser's Rule 56(d) motion should be reversed and this case remanded to provide Kohser an opportunity to complete her discovery. Further, because this discovery will, necessarily, provide additional evidence relevant to Protective's motion for summary judgment, the order on summary judgment should be reversed and the case remanded for further proceedings.

## II. The District Court Erred By Failing To Make An Independent Review Of The Material Facts.

A district judge is required to "make a *de novo* determination of those portions

of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires the district judge to "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citing H.R. Rep. No. 94-1609, 94th Cong., 2nd Sess., reprinted in 1976 U.S. Code Cong. & Admin. News 6162, 6163). Further, "[p]arties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982).

Kohser objected to the Magistrate Judge's Report and Recommendation. (Doc. 60.) In the introduction to these objections, Kohser provided a summary of the facts. *Id.* at 3-11. This summary was drawn from the various statements of disputed and undisputed facts contained in the parties' summary judgment papers.[3] While Kohser did not identify, in this summary, each factual finding which she believed was erroneous, she did identify and discuss particular facts later in the substantive portions of her objections. For example, the facts pertinent to Kohser's arguments concerning Protective's failure to abide by its own personnel policies are fully set

[3]The Northern District of Alabama utilizes the "point-counterpoint" format for summary judgment whereby the moving party must identify material facts not in dispute and the opposing party must respond to each fact by either agreeing that it is not in dispute or demonstrating that it is. (Doc. 11 at 6-9.)

forth, along with record citations to support those facts, in the second section of Kohser's objections. (Doc. 60 at 11 - 16.) Similarly, where Kohser argued that the Magistrate Judge ignored facts contained in her affidavit (Doc. 60 at 17), she specifically compares the Magistrate Judge's Report and Recommendation to his previous Memorandum Opinion and Order rejecting Protective's objections to this same affidavit.

The District Court ignored these specific objections, concluding instead that the factual summary included at the beginning of her objections was "an ineffective generalized objection under the report and recommendation process." Consequently, the District Court accepted the factual summary provided by the Magistrate Judge in his Report and Recommendation. (Doc. 63 at 15.) This was error. The District Court was obligated to conduct a *de novo* review of each of the factual findings to which Kohser objected. *Macort v. Prem, Inc.*, 208 F. App'x 781, 783-85 (11th Cir. 2006). Because the District Court failed to conduct such a review, it improperly adopted the facts as found by the Magistrate Judge. Because the adoption of these facts was error, any application of the summary judgment standard to those facts is defective. The District Court's decision should be reversed and this case remanded to the District Court for proper *de novo* review.

## III. The District Court Erred In Granting Summary Judgment To Protective.

Kohser raised objections to four particular conclusions reached by the Magistrate Judge: 1) the Magistrate Judge erroneously concluded that Protective's failure to follow its own procedures was irrelevant to Kohser's proof of age or sex discrimination (Doc. 60 at 11 - 16); 2) the Magistrate Judge improperly adopted inferences favorable to the movant (Doc. 60 at 18 - 22); 3) the Magistrate Judge improperly relied upon the "honest belief" or "good faith belief" rule at the summary judgment stage (Doc. 60 at 22 - 28); and 4) the Magistrate Judge improperly concluded that the evidence, when viewed in its entirety, did not establish a convincing mosaic of discrimination sufficient to defeat summary judgment (Doc. 60 at 28-29).

The District Court considered each of these objections and concluded that none, other then Kohser's objection about improper inferences, had merit. This was error.

### A. The Record Establishes That Protective Failed To Follow Its Own Procedures Before Demoting And Terminating Kohser.

Protective's handbook requires its managers to communicate any concerns "clearly and often." (Doc. 21-5 at 16.) Nevertheless, neither Bell nor Neal shared their concerns about Kohser's performance with her prior to her demotion. Neither

Bell nor Neal documented any performance deficiencies of Kohser prior to her demotion or her later termination. (Doc. 18-5 at 26, 39;Doc. 18-3 at 17-19.) When Kohser tried to get further explanation from Bell concerning her alleged deficiencies, Bell remained silent. (Doc. 18-1 at 54-55; Doc. 21-6 at 25, 34; Doc. 21-7 at 7.) It was not until after Kohser's demotion that McNary, in Human Resources, asked Bell to document his reasoning for demoting Kohser. (Doc. 21-5 at 70.) When he finally prepared an explanation, it included alleged deficiencies dating back to 2009, a year in which Bell rated Kohser as Exceeds or Meets Expectations. (Doc. 18-5 at 40; Doc. 21-6 at 19.)

Bell was expecting Kohser not to perform adequately in her new position. (Doc. 21-5, p. 71: "Assuming Renee doesn't walk out at this point [after being told she is being demoted], what is the next step from an HR perspective? Do I need to write up where Renee doesn't meet my expectations and place in her HR personnel file? Or just write them up and place in my files?") It was only after this interaction with HR that Bell created his reasons to justify the demotion of Kohser. A reasonable jury could infer from this evidence that Bell had no intentions of giving Kohser an opportunity to improve. Rather, he had already decided to set her up for termination if she did not voluntarily quit after he demoted her.

The District Court erroneously concluded that Protective's failure to follow

established procedures prior to disciplining Kohser was irrelevant to her proof of discrimination. Protective used a Corrective Action Form. (Doc. 21-4, pp. 67 - 72.) According to the Iistructions which accompany this form, it is "a management tool that documents the communication between a manager and an employee in dealing with difficult issues around employee performance." *Id.* The instructions further explain that the "form" format should be used for certain employees below salary grade 116 and may be used for employees in salary grades 116 and above. The "memo" format is recommended for use with employees in salary grades 116 and above. *Id.* Regardless, the instructions which accompany the Corrective Action Form, as well as the attachments, establish that Protective expects its managers to utilize either the form or the memo format as a means of advising its employees of performance or conduct deficiencies.

Kohser was familiar with this procedure because she had used it herself when dealing with serious performance issues on the part of one of her employees. She had contacted Bell and McNary for instruction on to how to deal with those issues. (Doc. 21-6 at 45.) Bell and McNary had instructed Kohser to utilize the Corrective Action Form procedure to deal with those issues. (Doc. 21-6 at 36, 45; Doc. 18-3 at 37.) Kohser used this form and, in the following months, issued additional warnings to this employee. (Doc. 21-6 at 36, p. Kohser/Protective 0000915; 000907-910.)

But neither Bell, Neal, nor McNary utilized either the Corrective Action Form or the memo form to address the alleged performance issues which supposedly led to the decision to demote and later terminate Kohser. Bell and McNary both admitted that they did not extend the benefits of the policy to Kohser. (Doc. 18-4 at 38; Doc. 21-3 at 29.) While McNary claimed that it did not have to follow the policy when it terminated Kosher because "[h]er performance deficiencies were identified through her Performance Appraisal Form . . . with expected action or expectations for improving those deficiencies" (Doc. 21-3 at 30), the Performance Appraisal Form she relied upon is the one completed by Neal, in January 2011, *id*., after Protective had demoted Kohser and decided to terminate her. And despite the fact that Protective believes that following the Corrective Action Form instructions is important, so that employees understand what is expected of them and whether or not they are on track to meet those expectations, *id*. at 32, Protective did not follow this practice with regard to its decision to demote and later terminate Kohser.

The Magistrate Judge and the District Court rejected this evidence of pretext on the grounds that the Corrective Action Form "does not state any policy exists requiring its use" and does not "contradict McNary's testimony it is not always used with management-level employees." (Doc. 59, p. 24.) Essentially, the Magistrate Judge and the District Court resolved this factual dispute by accepting Protective's

explanation and concluded that because there is no evidence of a mandatory progressive-discipline policy at Progressive, Kohser cannot compare her treatment to the treatment of others outside of her class. This was error.

An employer's failure to follow its own internal policies and procedures may be evidence of pretext. *Bass v. Bd. of County Comm'rs, Orange County*, 256 F.3d 1095, 1108 (11th Cir. 2001); *Hill v. Seaboard Coast Line R.R.*, 885 F.2d 804, 811 (11th Cir. 1989). This principle applies even when the employer contends that the procedures are not actually mandated. For example, in *Connor v. Sun Trust Bank*, 546 F.Supp. 2d 1360 (N.D. Ga. 2008), the court faced a similar issue to that presented here.

> Third, the plaintiff argues Sun Trust's failure to follow its internal policies for a position elimination is evidence of a pretext. Sun Trust responds that its position elimination "policies" referred to by the plaintiff are actually "guidelines" and are not mandatory. Notably, an employer's failure to follow its own policies may be evidence of a pretext. Here, Sun Trust does not assert that it followed its policies; rather, it asserts that its policies were not mandatory. Whether this is true is not clear. The human resources representative to BPG, Ms. Drury, gave conflicting testimony in this regard. In any event, the fact that such policies are mandatory is clearly disputed, and the extent to which they are gives rise to a showing of pretext for failure to follow such policies.

*Id.* at 1374-75 (internal references and citations omitted).

Kohser, while a Director, was salary grade 115. After her demotion, she was

in a position rated as salary grade 114. A reasonable jury could conclude, based upon the evidence, that either the Corrective Action Form or the memo form should have been used by Bell to notify Kohser of her alleged deficiencies prior to removing her from the position of Director in October, 2010. Further, because Kohser was in salary grade 114 when she was terminated, Neal should have used the form to notify her of any deficiencies prior to the decision to terminate her in January 2011. The District Court's conclusion to the contrary was erroneous. A reasonable jury could conclude, based upon the record, that Protective deprived Kohser of any formal notice of her performance issues and deprived her of any opportunity to correct those problems.

Further, the evaluation which Kohser did receive from Neal prior to her termination did not relate to the position she held but rather to her former position of Director. As Protective had already removed Kohser from this position, there was no reason for Neal to evaluate her performance as Director.[4] Protective contends that after her demotion, Kohser reported to Neal "doing special projects and Homegrown system work and was no longer supervising other employees." (Doc. 19, ¶ 85.) But

---

[4]The importance of this fact appears to have eluded the Magistrate Judge. At page 35 of his Report and Recommendation, the Magistrate Judge concludes that Mason, who assumed Kohser's duties as Director of the Red Team, cannot be considered Kohser's replacement because she was not a Director at the time she was terminated. There is no question but that Mason was ultimately promoted to the Director position which Kohser had held prior to her demotion. It is irrelevant that Mason's promotion occurred while Kohser was still working for Defendant. More importantly, perhaps, is the fact that in January 2011 Neal evaluated Kohser as a grade-level-115 Director, despite the fact that "she had not supervised the 'administrative' team or the Chase conversion for around five months at the time of her termination." (Doc. 59, p. 35.)

Neal does not evaluate her on these special projects or the Homegrown system work. The fact that he did not, but used the same deficiencies for terminating Kohser as were given for her demotion, gives rise to the inference that Protective had no intention of giving Kohser the opportunity to improve but was merely piling on and looking for a justification for terminating her.

### B. The District Court Relied Upon Improper Inferences.

The Magistrate Judge adopted Protective's argument that an age-discrimination plaintiff must meet a higher burden when the alleged decisionmaker is older than the plaintiff ("same group" inference), or where the same person who terminated plaintiff is the one who promoted her ("same actor" inference). (Doc. 59, p. 49.) While the District Court sustained Kohser's objection to the Magistrate Judge's use of the "same actor" inference (Doc. 63 at 26), it concluded that the same could not be said about the "same group"inference. *Id.* at 27. Regardless, the District Court concluded that Kohser had not presented sufficient evidenced of pretext. *Id.* at 28. This was error.

The Magistrate Judge improperly relied upon both of these inferences, and the heightened burdens of proof associated with them, when recommending that summary judgment be granted on Plaintiff's age discrimination claim. (Doc. 59, pp. 49-50.) Indeed, the Magistrate Judge specifically relied upon the "same group" inference to

explain away Plaintiff's evidence of indirect comments of age bias. (Doc. 59, p. 50) ("Assuming the comments made here are probative of discriminatory intent, Kohser has not presented nearly as much evidence as the plaintiff in *Bienkowski* to create a dispute of material fact, **especially in light of the fact the decisionmaker here was older than her** and made similar statements to the unattributed one she cites above.") (Emphasis added.)

A similar error was made when the Magistrate Judge ignored evidence of Protective's age stereotyping remarks about Kohser and her performance. A theme which runs through Protective's motion for summary judgment is that Kohser was resistant to change and unwilling to adapt. It starts with the claim that she did not know the TAI process and did not have a working knowledge of the TAI side (Doc. 19, ¶ 22) and proceeds from there: she was resistant to the gorilla project (Doc. 19, ¶ 45); she was interfering with communications in the department (Doc. 19,¶ 70); she was resistant to change (Doc. 19, ¶ 77); and she had the inability to learn (Doc. 19, ¶¶ 98 - 99).

The Magistrate Judge acknowledged that indirect comments about a plaintiff's age and adaptability can be probative of unlawful discriminatory intent. (Doc. 59, p. 49.) This conclusion is supported by the case authority cited by Kohser: *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 (5th Cir. 2005) (comments that an

employee was unwilling and unable to "adapt" to change can support an inference of age discrimination); *Bienkowski v. Am Airlines, Inc.*, 851 F.2d 1502, 1507 n. 4 (5th Cir. 1988) (comments criticizing an inability to adapt to new procedures constituted evidence of age discrimination); *Rachid v. Jack In The Box, Inc.*,376 F.3d 305, 315 (5th Cir. 2004) (comments to look "sharp" and comments concerning an employee's willingness to "adapt" to new systems, while nebulous, are sufficient to avoid summary judgment).

The District Court, like the Magistrate Judge, elected to discuss only one of these cases: *Bienkowski*. The Magistrate Judge noted that the "*Bienkowski* court went on to note that these indirect comments in conjunction with detailed testimony denying that plaintiff's performance had been criticized by his superiors or that there had been meetings to discuss his performance, as documented by the defendant, was '*barely* sufficient to create a jury issue of intentional discrimination.'" (Doc. 59, p. 50, quoting *Bienkowski*.) The District Court reached this same conclusion. (Doc. 63 at 30.) This was error.

Despite Kohser's testimony that her superiors had never criticized her performance prior to her demotion and had never met with her to discuss her performance prior to her demotion and her termination, the District Court agreed with the Magistrate Judge's conclusion that Kohser had not presented nearly as much

evidence as the plaintiff in *Bienkowski* to create a dispute of material fact. (Doc. 59, p. 50; Doc. 63 at 30.)

But this conclusion ignores the effect which the improper inference had upon the Magistrate Judge's conclusions. The Magistrate Judge noted that Kohser's inability to meet the pretext standard was especially so "in light of the fact the decisionmaker here was older than her." *Id.* That statement indicates that the Magistrate Judge not only considered the "same group" inference but also the heightened burden of proof associated with it. Rather than review the Magistrate Judge's recommendation to determine to what extent these improper inferences affected the Magistrate Judge's resolution of the legal issues, the District Court committed the same error, permitting these same inferences, and the heightened burden of proof associated with them, to guide its review.

Further, whether evidence is "barely" sufficient to create a jury issue or "overwhelmingly" sufficient to create a jury issue is irrelevant. If the evidence creates a jury issue, barely or overwhelmingly, plaintiff is entitled to have a jury resolve that issue.

Finally, the District Court overly relied upon questionable language in *Bienkowski* itself. For example, the District Court emphasized that portion of the *Bienkowski* opinion which contrasts the testimony offered by Bienkowski with other

cases which had held that a plaintiff's conclusory testimony of adequate job performance, standing alone, is insufficient to raise a jury issue of age discrimination. (Doc. 63 at 29.) But this is not a case where Kohser presented conclusory testimony about adequate job performance. Rather, Kohser presented testimony that none of the alleged performance problems relied upon by Protective to justify her demotion, and later termination, had ever been brought to her attention. It is not Kohser's conclusory testimony, but the lack of any contemporaneous criticism of Kohser's performance by Protective, which distinguishes this case and raises the specter of pretext.

In addition, Protective told the EEOC, the government agency responsible for investigating claims of age discrimination, that Kohser was unwilling or unable to adopt to change or adopt new and better ways of performing her work. (Doc. 21-7 at 6.) The District Court characterized this comment as "one nebulous arguably age-related assessment" of Kohser. (Doc. 63 at 37.) Nevertheless, the District Court dismissed it out of hand as insufficient to defeat summary judgment. In doing so the District Court improperly weighed the evidence. It is up to a jury to determine whether this arguably age-related assessment of Kohser is sufficient to establish her claim of age discrimination.

The District Court similarly erred by discounting factual contentions contained

in Protective's briefs, concluding that a "factual contention offered in a brief is not evidence, but rather only Protective's lawyer's characterization of the evidence." This is incorrect as a matter of law. Statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney. *Tucker v. Housing Authority of Birmingham Dist.*, 507 F.Supp.2d 1240, 1270-71 (N.D. Ala. 2006). Factual statements in court filings, including briefs and motions, can be binding admissions of the party. *Id.* at 1271, 1275. Consequently, the District Court erred by disregarding or discounting the admissions found in Protective's briefs as mere "characterization of the evidence."

As the Court noted in *Bienkowski*, indirect comments about an employee's age and adaptability, along with disagreement about the plaintiff's performance, are sufficient to create a jury issue of intentional age discrimination. Kohser presented that evidence. The District Court erred by concluding otherwise.

### C. The Record As A Whole Establishes A Convincing Mosaic of Discrimination.

Faced with Kohser's argument that there is a convincing mosaic of facts to establish an unlawful motive for Protective's adverse employment actions, the Magistrate Judge decided to examine the facts, not in a light most favorable to Kohser, but in a light most favorable to Protective. (Doc. 59, pp. 51-52.) While the

Magistrate Judge recognizes that "most of the record is in dispute" and that Kohser had presented her own testimony to support her contention that Bell's reasons for demoting and terminating her were erroneous, the Magistrate Judge concluded that her claims could not survive summary judgment because she had not presented evidence leading to a reasonable inference that Bell did not have a "good faith" belief in the truth of his reasons. (Doc. 59, p. 51.) As discussed below, this has created an impossible barrier for any plaintiff to meet and is not consistent with the spirit or intent of the civil rights laws. To bolster this conclusion, the Magistrate Judge again fell back on the "same group" inference. Being selective with the facts, the Magistrate Judge concluded that after her demotion, Kohser was replaced by a woman, ignoring the facts discussed by the Magistrate Judge earlier in his Report and Recommendation, that Mason, a male, took over Kohser's duties. (Doc. 59, p. 35.) Kohser's age claim gets even less consideration: "Regarding Bell's alleged age-based discriminatory intent, Bell himself is older than Kohser, and her allegations essentially contend he demoted and terminated her because he believes people younger than he is are too old to adapt." (Doc. 59, p. 52.) Of course, these are not simply allegations. As discussed earlier, the facts set forth by Protective concerning Kohser rely heavily upon the claim, denied by Plaintiff, that she was unwilling to adapt to change. The District Court committed the same error when it accepted the

Magistrate Judge's Report and Recommendation and the analysis contained therein.

## IV. The District Court Erred In Applying The "Honest Belief" or "Good Faith Belief" Rule.

All "honest belief" and "good faith belief" rules require proof of the employer's subjective belief and evidence of its objective reasonableness. The "honesty of an employer's statement is often revealed by analyzing its reasonableness; the more objectively reasonable the explanation, the more likely it honestly motivated the challenged employment action." *Duncan v. Fleetwood Motor Homes*, 518 F.3d 486, 492 (7th Cir. 2008). The opposite is also true. The implausibility of an employer's asserted legitimate reason for its actions may demonstrate pretext.

Courts have recognized the "honest belief" rule where the employer made a reasonably informed and considered decision before taking an adverse employment action. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

But more is required than a mere recitation by an employer that "I acted in good faith" in order to establish this defense. If it truly becomes the law of the land that all an employer has to do to get by with illegal discrimination is to swear that it really believed its own pretextual excuse for the adverse employment action, then we might as well repeal all civil rights statutes and stop pretending that the statutes provide any real protection to victims of invidious discrimination.

The reality of employment law claims is that it is nearly impossible for the plaintiff ever to produce an eye witness to what was in the manager's mind at the moment a decision was made. So long as a defendant swears it believes something or acted for only lawful reasons, and the Courts are predisposed to accept this assurance as a matter of law, then it will be nearly impossible for a plaintiff to survive summary judgment absent a signed confession.

One fundamental flaw with the so-called "honest belief" rule at the summary judgment stage is that, by definition, it requires the Court to assess the credibility of witnesses. But "the line between honest belief and purposeful misrepresentation is fine and indistinct." *U.S. v. Steinhilber*, 484 F.2d 386, 390 (8th Cir. 1973); *Gay v. U.S.*, 408 F.2d 923, 931 (8th Cir. 1969). In the context of a pre-trial dispositive motion, judges should not be making close credibility determinations (or any credibility determinations at all). It simply invades the province of the jury.

The District Court acknowledged that Kohser specifically challenged the Magistrate Judge's reliance upon the "good faith" rule in recommending summary judgment. (Doc. 63 at 32.) Despite the substantial discussion of this argument in Kohser's objections (Doc. 60, pp. 22-28), the District Court concluded that this argument was underdeveloped because Kohser did not reference specific pages of the Report and Recommendation in which she contends the Magistrate Judge erred.

(Doc. 63 at 32.) This was error.

The Magistrate Judge relied upon the "good faith" rule in two places in his Report and Recommendation: at page 32 ("Kohser points to no evidence indicating Bell did not have a good faith belief in the truth of the reasons upon which he states he based his decision to demote her") and page 51 ("Although Kohser has presented her own testimony to support her contention Bell's reasons for demoting and terminating her were erroneous, she has been unable to present evidence leading to a reasonable inference Bell, the decisionmaker, did not have a good faith belief in the truth of his reasons, which is the question relevant to his intent.") Kohser referenced the latter of these two statements, *i.e.* the most significant, in her Objections (Doc. 60 at 28), albeit included along with her broader objection that the Magistrate Judge erred by concluding Kohser's evidence did not create a convincing mosaic of facts sufficient to defeat summary judgment. Consequently, the District Court's procedural objection is not well taken.

The District Court also erred substantively when it concluded that *Elrod* supports the application of the "good faith" rule at summary judgment. Relying upon *Elrod*, the District Court held that "the honest belief rule is a binding employment law principle within the Eleventh Circuit that deserves consideration on summary judgment." (Doc. 63 at 32-33.) Yet, earlier in the Memorandum Opinion, the District

Court had noted that "*Elrod* was decided on a trial record and does not directly address to what degree the same group inference can be invoked by the court on summary judgment." (Doc. 63 at 27.) Consequently, a mere citation to *Elrod* does not resolve the objection raised by Kohser: consideration of the so-called "honest belief" or "good faith belief" rule at the summary judgment stage, by definition, it requires the Court to assess the credibility of witnesses. (Doc. 60 at 23.) This is improper.

Essentially, the courts have created a presumption that employers will always be honest about their own conduct and their own beliefs. Accepting this presumption: violates Rule 56, Fed. R. Civ. Proc.; violates the Congressional mandate to interpret civil rights legislation broadly; is based on the nonsensical notion that employers are unlikely to lie, exaggerate, or simply erroneously recall their own motives as purer than what they really were at the time; is inconsistent with how social scientists have proven human beings normally act; is inconsistent with long-standing Supreme Court precedent; and undermines respect for the judiciary.

It is black letter law that evidence which would allow a jury to find that the employer's proffered reason for its decision is false is enough to prove discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Once the plaintiff has pointed to evidence sufficient to discredit the

defendant's proffered reasons, that is, to prove that they are "unworthy of credence," there is no requirement that the plaintiff come forward with additional, independent evidence of the decisionmaker's subjective beliefs. *Id.* at 148-49. The Supreme Court has never hinted it would recognize an "honest belief" exception to these rules and the exception is not found in the ADEA.

It is also important to recognize the reality that an employer's honest belief that an employee has committed misconduct is not necessarily inconsistent with a finding that the employer has engaged in illegal discrimination. Human beings often arrive at "honest beliefs" based on impermissible stereotypes, and decisions based on those "honest beliefs" are just as illegal as those made by overt bigots. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990-91 (1988) (Title VII proscribes subjective decisionmaking system that discriminates just as it does a system pervaded by impermissible intentional discrimination); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239-58 (1989); *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) (decisionmaking influenced by stereotypes is 'the essence of what Congress sought to prohibit in the ADEA."); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 59-61 (1st Cir. 1999); *U.S. v. Wilson*, 853 F.2d 606, 611-12 (8th Cir. 1988) (prosecutor's honest belief that black jurors would be more sympathetic to black defendant is premised on stereotype, insufficient under *Batson*, and unconstitutional).

The "honest belief" rule "is plainly inconsistent with what empirical social psychologists have learned over the past twenty years about the manner in which stereotypes can cause a decision maker to discriminate against members of a stereotyped group." Linda Hamilton Krieger & Susan T. Fiske, *Behavioral Realism in Employment Discrimination Law: Implicit Bias & Disparate Treatment*, 94 Cal. L. Rev. 997, 1036 (2006). Subtle forms of intergroup bias can infiltrate decision making long before any decision is made. These biases can latently distort the perceptual data on which that decision is ultimately premised. These biases often operate outside of the decision maker's attentional focus, and therefore outside of his or her awareness. A decision maker can act because of or on the basis of a person's race, sex, or other group status, while subjectively believing that he or she is acting on the basis of some legitimate, nondiscriminatory reason. *Id.* at 1034. In other words, the "honest belief" rule is based on the false premise "that when people discriminate they know that they are doing so." *Id.* at 1038. This development has not escaped the members of the Supreme Court. "Prejudice, we are beginning to understand, rises not from malice or hostile animus alone. It may result as well from insensitivity caused by simple want of careful, rational reflection or from some instinctive mechanism to guard against people who appear to be different in some respects from ourselves." *Bd. of Tr. v. Garett*, 531 U.S. 356, 374 (2001) (Kennedy,

J., concurring).

No expert witness would ever be allowed to testify that the "honest belief" rule is based on accurate assumptions or is supported by social science, because such testimony would never meet the *Daubert* test for admissibility. It makes no sense that, through a judicially created presumption based on no science at all, the "honest belief" rule has become embedded in the common law.

Regardless, examining the evidence in its entirety, a reasonable jury could conclude that Bell did not act on the basis of an honest good faith belief that Kohser was unable to perform her duties when he demoted and later terminated her. A reasonable jury could conclude that Bell and Neal decided to get rid of Kohser because of her age and/or her sex and to replace her with someone who was either younger (and more willing to adapt to change) or a male (someone they could get along with). Rather than give Kohser assignments which she could perform, Bell deliberately assigned her tasks which he knew she could not perform (the SOX update) and then criticized her performance when she did not perform to his standards. Even after Kohser was demoted and placed in a new job, she was not assessed based upon her performance in this new position. Instead, Neal assessed her performance based upon a job which she had not held for five months and ignored the performance of her current duties. While Bell and Neal may both contend that they

acted in "good faith," a jury is not obligated to agree with them.

The Magistrate Judge and the District Court erred by giving excess deference to the "good faith" rule at the summary judgment stage.

## CONCLUSION

The Magistrate Judge and the District Court both erred when they denied Kohser's motion to conduct discovery in response to Protective's Motion for Summary Judgment. As a result, Kohser was unable to marshal the evidence needed to adequately respond to Protective's evidence. Furthermore, the record before the Court contains sufficient evidence to defeat summary judgment as to Kohser's claims of age and sex discrimination and the District Court's decision adopting the Report and Recommendation of the Magistrate Judge should be reversed and this case remanded to the District Court.

Respectfully submitted,

/s/ Alicia Haynes
Alicia Haynes
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

This brief exceeds thirty (30) pages of text that is required to be counted under 11th Circuit Rule 28-1. However, this brief complies with the 14,000 word type-volume limitation of Rule 32(a)(7)(B)(iii), Fed. R. App. Proc. The word-processor used to compile this brief reveals that there are 13265 words of material required to be counted under Rule 32(a)(7)(B)(i), Fed. R. App. Proc.

/s/ Alicia Haynes
Alicia Haynes
Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing brief with the persons below via electronic and regular mail, postage prepaid, on this the 26th day of August, 2015.

Attorneys for Defendant-Appellee:

Warren B. Lightfoot, Jr., Esq.
Chris Mitchell, Esq.
Stephanie H. Mays, Esq.
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 2400
Birmingham, AL 35203-2618

/s/ Alicia K. Haynes
Alicia K. Haynes
Attorney for Appellant